**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:19-CR-41 |
| | ) | |
| MARTIN JAMES FOGGIE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Martin Foggie faces a one-count indictment for possession with intent to

distribute a large quantity of methamphetamine which was seized from him during a

traffic stop in April 2019.  Foggie contends that the stop was improper because he was

not violating any traffic laws.  But evidence adduced at the suppression hearing

suggested the contrary.  According to credible testimony from the arresting officer,

Foggie was following the vehicle in front of him much too closely, and this infraction

provided the arresting officer with probable cause to pull Foggie over.  Everything else

flowed from there.  The first officer, and a back up officer as well, both detected the

odor of marijuana coming from Foggie's vehicle which led to the search of the car

which, in turn, led to the recovery of the stash of drugs.  The Motion to Suppress [DE

25] will therefore be DENIED.

### Factual Background

At the hearing on September 16, 2019, Sergeant Kilgore and Officer Miller of the

Cedar Lake Police Department testified.  Here's what the evidence shows: On April 2,

2019, Foggie was driving a rental car, going southbound on U.S. 41 near Crown Point, Indiana. Sergeant Kilgore was working traffic enforcement that day, and was sitting in the median of the 15300 block of Wicker Avenue in an unmarked truck. Although it is called Wicker Avenue at that point, the road is actually U.S. Highway 41 which runs the entire length of the State of Indiana. It is a very busy route, and, according to Officer Kilgore, a police officer for approximately 20 years, he has seen plenty of severe car accidents in that area. The speed limit was 60 mph there.

Kilgore noticed a group of four vehicles traveling southbound in the outside lane. The first was a white van and the second was a silver Hyundai being driven by Foggie. According to Kilgore, the Hyundai was traveling very close to the vehicle in front of it – about two car lengths behind the van and less than 2 seconds, although Kilgore was less sure on the second point. The bottom line was that, based on his experience and his eyewitness view of the cars, Kilgore thought the Hyundai was following the van in front of it too closely, so he pulled out and began to follow the car. When he got closer, Kilgore saw Foggie repeatedly look at him through his mirror in a nervous manner.

About two miles down the road from where Kilgore first saw the Hyundai, he activated his lights and pulled the car over. When he approached the vehicle, Kilgore smelled a burnt marijuana odor coming from the car. Kilgore claims he is familiar with the odor of marijuana through his training and experience. He asked Foggie for his driver's license, and when Foggie turned over his North Carolina driver's license,

2

Kilgore noticed that his hands were shaking and he was breathing heavily. Foggie didn't appear impaired though, just nervous.

Sergeant Kilgore returned to his vehicle and ran Foggie's license, but there was no match. So he went back to the car, asked Foggie to exit, and requested the rental paperwork. Foggie exited the vehicle and gave him a rental agreement, but it had expired a long time ago. After Kilgore asked Foggie if he had a more recent rental agreement, Foggie went back to the car to look. He sat in the driver's seat, but left the door open.

About this time, Officer Miller arrived as backup. He approached the passenger side of Foggie's car first, but then moved over to the driver's side where Foggie was still sitting with the door open. Miller also detected an odor of marijuana coming from the car.

Foggie eventually produced another more recent contract, which had expired about a week before the stop. Kilgore returned to his vehicle and re-ran Foggie's information and this time confirmed that Foggie had a valid license. Kilgore then returned to the vehicle again and asked Foggie to exit one more time. This time, Foggie shut his door, and refused to exit. Foggie kept asking why Kilgore wanted him to get out of the car again, so Kilgore told him that he detected the odor of marijuana, and warned that if he did not get out of the car, he was going to break the window. Foggie finally complied and got out of the car.

At this point, Foggie was patted down. Then, Kilgore searched the car while

Foggie stood with Officer Miller. Before searching the car, Kilgore asked Foggie if everything in the car belonged to him, and he confirmed that it did. Miller said that although he smelled marijuana coming from the car, he did not smell it on Foggie's person when he stood next to him.

During the search of the car, Kilgore found in the driver's seat door 2 lighters, a book of matches, and spray air freshener. In the trunk, he found several basketballs, a backpack and 2 plastic bags. One of the plastic bags recovered from the trunk had five large bundles in it, tightly wrapped in plastic, with a reddish-tint.

At this time, Foggie was placed in handcuffs and given his Miranda warning. He denied knowledge of the plastic bag with the tightly wrapped bundles. A police K9 unit was called, and showed a positive indication on the passenger door, trunk, and the plastic bag. Field testing indicated a positive response to the presence of methamphetamine, which weighed approximately 5 pounds. Kilgore gave Foggie a written warning for following the vehicle in front too closely.

**Discussion**

Foggie contends that he did not commit any traffic violations, and Sergeant Kilgore did not have reasonable suspicion to make the stop. Let's start with the basic observation that the officer's motivation in stopping Foggie is beside the point. This is because an arrest or stop is constitutional regardless of hidden motive "so long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest [or stop] is constitutional." *United States v. Trigg*, 878 F.2d 1037, 1041 (7th

Cir. 1989); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (finding actual

motivations of police play no role in probable cause analysis); *United States v. Wanjiku*,

919 F.3d 472, 487 (7th Cir. 2019) ("the subjective beliefs or intentions of law enforcement

officers are irrelevant in determining whether reasonable suspicion to search existed.");

*United States v. Correa*, 908 F.3d 208, 214 (7th Cir. 2018) ("probable cause satisfies the

Fourth Amendment's reasonableness requirement even if the officers were more

interested in suspected drug trafficking than in dangerous driving . . . .").

The test for whether a traffic stop is lawful is an objective one and it involves

two-prongs. *See United States v. Quinones-Sandoval*, 943 F.2d 771, 774 (7th Cir. 1991);

*Trigg*, 878 F.2d at 1041. The first prong is whether the officer had reasonable suspicion

to make the stop (in other words, did the officer have probable cause to believe that the

defendant was committing an offense?); and the second is whether state or municipal

law afforded a basis for the stop. *Quinones-Sandoval*, 943 F.2d at 774; *United States v.*

*Fiala*, 929 F.2d 285, 287 (7th Cir. 1991); *Trigg*, 878 F.2d at 1041. If both prongs are met,

then the stop satisfies the Fourth Amendment's reasonableness requirement. *Trigg*, 878

F.2d at 1041. The government has the burden to prove the legality of the traffic stop

and the warrantless search of the car by a preponderance of the evidence. *See Colorado*

*v. Connelly*, 479 U.S. 157, 168 (1986).

In this case, both prongs of the objective test are met. First, the stop was

reasonable because Sergeant Kilgore had probable cause to believe a traffic violation

had occurred. *See United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (quotation

omitted) ("Probable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.") "Probable cause is an objective standard, based on the totality of the circumstances." *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019).

I find credible Sergeant's Kilgore's testimony that Foggie's car was following the van in front of it too closely. Sergeant Kilgore is a seasoned police officer. He testified that Foggie's car was following less than 2 seconds and an estimated 2 car lengths behind the white van, and he did not think Foggie's car would have time to react to avoid a collision at 60 mph if the van in front stopped abruptly or had an emergency. To the extent defense counsel questioned Sergeant Kilgore whether he was sure the car was definitely less than 2 seconds behind the van, questioning his precise degree of certainty does not get the defense anywhere. "Whether the driver actually committed a traffic infraction is irrelevant for Fourth Amendment purposes so long as there was an objective basis for a reasonable belief he did." *Lewis*, 920 F.3d at 489 (citing *United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000)); *see also Muriel*, 418 F.3d at 724 ("we need only inquire whether the officer had probable cause to believe that a traffic violation occurred . . . not whether [defendant] actually was tailgating.").

Here, Sergeant Kilgore personally witnessed Foggie's car and sufficiently articulated his belief that it was following too closely. He also explained the rationale behind his belief, and referred to notations of the same in his report. Sergeant Kilgore explained that generally, a car should be one car length behind another vehicle for every

10 miles an hour (or 6 car lengths behind if it is going 60 miles per hour), and 1 second

behind for every 10 miles per hour (or 6 seconds behind if it is going 60 miles per hour).

Kilgore stated that he measured by counting, and Foggie's car was following less than

two seconds behind the van, where the speed limit was 60 mph, so he concluded this

was an unreasonable distance. I find Sergeant Kilgore's testimony truthful and

persuasive, and this constitutes reasonable suspicion to make the stop. *See United States*

*v. Peters*, 743 F.3d 1113, 1117 (7th Cir. 2014) (affirming district court crediting officer's

testimony where he was an experienced police officer and he "judged the distance to be

too short for cars moving so quickly.").

The government has also satisfied the second prong of the test, which is

providing a legal basis to make the stop. Indiana Code § 9-21-8-14 states that "[a] person

who drives a motor vehicle may not follow another vehicle more closely than is

reasonable and prudent, having due regard for the speed of both vehicles, the time

interval between vehicles, and the condition of the highway." There is no prescribed

safe distance in this statute, or mandated amount of time between the cars to be

considered safe. Instead, the standard centers around whether the driver is exercising

reasonable care and, like I discussed above, it is a totality of the circumstances test to

determine if a driver is following more closely than is reasonable and prudent at the

time. *See Whitaker v. State*, 778 N.E.2d 423, 428 (Ind. Ct. App. 2002) (quotation omitted)

("There is no rule, other than that relating to the exercise of reasonable care, which

prescribes a distance that must be maintained between vehicles while running along the

highway."). The Seventh Circuit has held that violation of this statute is sufficient to justify a traffic stop. *See Peters*, 743 F.3d at 1117. While following too closely to another car is admittedly a relatively minor offense in the grand scheme of potential driving infractions, the Seventh Circuit has indicated that "our objective analysis is indifferent to the relatively minor nature of the traffic offense." *United States v. Williams*, 106 F.3d 1362, 1365 (7th Cir. 1997).

In addition to the stop itself, Foggie also objects to the subsequent search of his car. At the hearing, his counsel implied that the officers could have made up the fact that they allegedly smelled marijuana emanating from the car or belatedly concocted that reason to justify the search. Moreover, counsel pointed out that other than the lighters and matches (which are innocuous), the officers didn't even recover any marijuana paraphernalia. Again, I find the testimony of both Sergeant Kilgore and Officer Miller credible and they both said they smelled burnt marijuana coming from the car. The Seventh Circuit has very clearly held that a police officer "who smells marijuana coming from a car has probable cause to search that car." *United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008); *see also United States v. Bean*, 775 F. App'x 822, 824 (7th Cir. 2019) (because the police smelled marijuana in the car, they had probable cause to search the car); *United States v. Mosby*, 541 F.3d 764, 768-69 (7th Cir. 2008) (holding the smell alone was enough to give rise to probable cause to search the entire vehicle, including closed containers like a garbage bag); *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (noting smell of marijuana is "simple and compelling

foundation" for searching the entire car).

In sum, the initial traffic stop was supported by Sergeant Kilgore's observations that Foggie's car was traveling too closely and this gave him probable cause to believe Foggie committed a traffic violation.  During the stop, when Kilgore and Officer Miller both detected the odor of marijuana emanating from the vehicle, they had probable cause to search the entire car, including the trunk.

### Conclusion

For the reasons stated above, the Motion to Suppress [DE 25] is DENIED.


SO ORDERED.

ENTERED: October 1, 2019.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT